UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN K BLACK, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GREATER BAY BANCORP EXECUTIVE SUPPLEMENTAL COMPENSATION BENEFITS PLAN, et al.,<br><br>    Defendants. | Case No.16-cv-00486-EDL<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 88 |

Before the Court is Defendant Greater Bay Bancorp Executive Supplemental Compensation Benefits Plan and Wells Fargo Bank, N.A. (together, "Defendants") motion for attorneys' fees in the amount of $363,876.50 under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. For the reasons discussed below, the Court DENIES the motion.

**I.  BACKGROUND**

The Court's previous order granting Defendants' motion for summary judgment set forth the full factual and procedural background of this case, so this section only contains the background relevant to this motion. Plaintiffs brought this case against Defendants alleging that, pursuant to the terms of a Supplemental Executive Retirement Plan and related documents, they were entitled to supplemental retirement benefits payments funded by the employer annually through contributions to Secular Trusts to purchase life insurance policies, as well as a life insurance death benefit payable to Plaintiffs' estate. Defendants disagreed with Plaintiffs' interpretation of the Plan documents, arguing that there was no death benefit. Plaintiffs sought approximately $15 million in additional contributions to their Secular Trusts to pay for the alleged death benefit.

The parties filed cross motions for summary judgment on Plaintiffs' claims under 29 U.S.C. § 1132(a)(1)(B). On January 23, 2018, this Court denied Plaintiffs' motion, granted Defendants' motion, and entered judgment for Defendants. Dkt. Nos. 86-87. Plaintiffs filed a notice of appeal with the Ninth Circuit. Dkt. No. 95.

Defendants subsequently filed a motion for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1) on February 6, 2018. Dkt. No. 88. Plaintiffs opposed the motion on February 20, 2018. Dkt. No. 92. Defendants filed their reply on February 27, 2018. Dkt. No. 97.

## II.  LEGAL STANDARD

ERISA provides that "[i]n any action under this subchapter (other than an action described in paragraph (2))[1] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). As its terms suggest, such awards are not limited to prevailing plaintiffs, but may be awarded to "either party." The Ninth Circuit has held that the court should not "'favor[ ] one side or the other'" when determining whether to award attorneys-fees in ERISA matters. Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1236 (9th Cir. 2000) (quoting Estate of Shockley v. Alyeska Pipeline Serv. Co., 130 F.3d 403, 408 (9th Cir. 1997); see also Honolulu Joint Apprenticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster, 332 F.3d 1234, 1239 (9th Cir. 2003) ("we have gone to some lengths to make clear that the availability of fees is not limited to participants and beneficiaries, and have also approved the award of fees or partial fees to prevailing plans").

To obtain an award under Section 1132(g)(1), "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees." Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983)). The Supreme Court has defined "some degree of success on the merits" as follows:

> A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]," but does

---

[1] Paragraph (2) of 29 U.S.C. § 1132(g) provides for a mandatory award of reasonable attorneys' fees and costs in actions for the payment of delinquent contributions under 29 U.S.C. § 1145. That section is not applicable to this case.

2

> satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'"

Id. (quoting Ruckelshaus, 463 U.S. at 688 n.9).

Once it is established that a fees claimant has shown the requisite "degree of success," the court must analyze the five factors set forth in Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980):

> 1. [T]he degree of the opposing party's culpability or bad faith,
> 2. [T]he ability of the opposing party to satisfy an award of fees,
> 3. [W]hether an award of fees would deter others from acting in similar circumstances,
> 4. [W]hether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and
> 5. [T]he relative merits of the parties' positions.

Cline, 200 F.3d at 1235 (citing Hummell, 634 F.2d at 453). "No one of the Hummell factors, however, is necessarily decisive, and some may not be pertinent in a given case." Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1416 (9th Cir. 1984) (citation omitted). The factors "reflect a balancing," and the Court "need not find that each factor weighs in support of fees" in order to grant an award. McElwaine v. U.S.W., Inc., 176 F.3d 1167, 1173 (9th Cir. 1999). While these factors apply to both sides, they "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." Credit Managers Ass'n of S. Cal. v. Kennesaw Life & Acc. Ins. Co., 25 F.3d 743, 749 (9th Cir. 1994) (internal quotation marks and citations omitted).

Finally, if the Court finds that an award of fees is appropriate in light of the Hummell factors, the party seeking the fee award must show that its requested fees are reasonable. See D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990).

## III. DISCUSSION

The sole question on this motion is whether the Court should exercise its discretion to award Defendants' attorneys' fees as the prevailing party in this case. Defendants seek a total award of $363,876.50.

### A. Terms of the Compensation Agreements

The Court has already found that Plaintiffs were not owed a secured death benefit under

the terms of the applicable Compensation Agreements. Although ERISA permits a discretionary award of attorneys' fees, Defendants originally also noted that they are owed their legal fees under the terms of the Compensation Agreements, which provide that:

> In the event of any arbitration or litigation concerning any controversy, claim or dispute between the parties hereto, arising out of or relating to this Agreement or the breach hereof, or the interpretation hereof, the prevailing party **shall be entitled to recover from the non-prevailing party reasonable expenses, attorneys' fees and costs incurred in connection therewith** or in the enforcement or collection of any judgment or award rendered therein. The "prevailing party" means the party determined by the arbitrator(s) or court, as the case may be, to have most nearly prevailed, even if such party did not prevail in all matters, not necessarily the one in whose favor a judgment is rendered.

Dkt. Nos. 76-1, 76-2, ¶ XII.E; Dkt. No. 76-3 ¶ XI.E (emphasis added). Defendants do not rest their request for attorneys' fees on a contractual basis, however, as they state that they "are now seeking to enforce this bargained-for attorneys' fees provision, albeit through ERISA Section 502(g)." Mot. at 4. The terms of the Compensation Agreement are irrelevant because a plan provision cannot alter ERISA's statutory fee-shifting rule. See Heimeshoff v. Harford Life & Acc. Ins. Co., __ U.S. __, 134 S. Ct. 604, 610 (2013). Therefore, the Court has disregarded this provision of the Compensation Agreements in deciding this motion.

### B. Prevailing Party Status

Through motions to dismiss, Defendants whittled this case down to one claim for benefits under Section 502(a)(1)(B).[2] In the end, the Court granted summary judgment in Defendants' favor. The parties do not dispute that Defendants are prevailing parties for purposes of an attorneys' fees award under ERISA.

### C. Hummell Factors

Defendant argues that each of the five Hummell factors weigh in favor of granting its request for attorneys' fees.

#### 1. Plaintiff's Culpability or Bad Faith

Defendants do not suggest that Plaintiffs acted in bad faith in bringing this litigation, but

---

[2] The operative complaint includes two claims for benefits under Section 502(a)(1)(B), but they are duplicative of each other, so there was effectively only one claim left at summary judgment.

4

they do contend that "Plaintiff's relentless pursuit of meritless claims is precisely the type of culpable conduct that makes an award of fees appropriate here." Mot. at 6 (citing Dublin Eye Assocs., P.C. v. Mass. Mt. Life Ins. Co., 2014 WL 1217664, at *8 (E.D. Ky. Mar. 24, 2014) (finding plaintiff's culpability in wasting the court's time with meritless claims justified a fee award to defendant); Foley v. Bethlehem Steel Corp., 30 F. Supp. 2d 366, 368 (W.D.N.Y. 1998) ("Although plaintiff did not demonstrate any extreme instances of bad faith, he did pursue this meritless litigation in an almost haphazard fashion, changing legal theories and defendants for the first several years of litigation, making an award of fees appropriate.")).

Defendants base this argument about Plaintiffs' "relentless pursuit of meritless claims" on two grounds, which Defendants claim shows that Plaintiffs could not have reasonably believed that "they could prove an actionable ERISA claim," citing Cline, 200 F.3d at 1236. First, they argue that Plaintiffs twice made a claim for breach of fiduciary duty in successive complaints, even though the Court explained that this type of claim was not viable on the alleged facts and under Ninth Circuit law. See Dkt. Nos. 44 & 61 (dismissing Plaintiffs' breach of fiduciary duty claim because Defendants had no duty to Plaintiffs regarding assets in the Trusts that Plaintiffs themselves controlled). Second, they contend that Plaintiffs continued pursuing their claim for benefits even though the Court stated in its order granting dismissal of the first amended complaint that it was skeptical that the Plan documents alone provided the benefits Plaintiffs sought. The Court's order explained that "[i]f the Compensation Agreement were the sole Plan document, these provisions might foreclose the possibility that a guaranteed death benefits from the life insurance policies were contemplated" and that "[t]hese terms of the Trust Agreement do tend to support Defendants' position that the annual contributions to the Trusts were intended only to fund Plaintiffs' supplemental benefits, and not to also fully fund life insurance policies to provide death benefits." Dkt. No. 44 at 11, 12. By continuing to press their claims under the Plan documents, Defendants argue that Plaintiffs wasted everyone's time and resources.

The Court's comment at the pleading stage that it was not convinced Plaintiffs could make out a winning claim under the Plan documents is not an adjudication on the merits or even necessarily an indication that Plaintiffs lacked a colorable claim. As Plaintiffs point out, in ERISA

cases

> the "culpability" of a losing plaintiff significantly differs from that of a losing defendant. A losing defendant must have violated ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate. A losing plaintiff, on the other hand, will not necessarily be found "culpable," but may be only in error or unable to prove his case.

Marquardt v. N. Am. Car Corp., 652 F.2d 715, 720 (7th Cir. 1981); accord Carpenters, 726 F.2d at 1416. In arguing that Defendants have not shown that Plaintiffs acted culpably, Plaintiffs contrast their conduct with that in Credit Managers, where the plaintiff receiver continued to pursue a claim after remand from the Ninth Circuit when it knew it had no evidence to support the claim. See Credit Managers, 25 F.3d at 749. In finding bad faith that supported a fee award, the court noted that the district court "made clear that its decision to allow the case to proceed to trial was based primarily on misrepresentations made by CMA and its counsel regarding the facts that it could prove." Id. Plainly, this conduct is distinctly different Plaintiffs'.

Other cases cited by Defendants are more on point. In Dublin Eye Assocs, the court entered a fee award against plaintiff trustees who brought a time-barred lawsuit against a service provider whom they alleged sold improper life insurance policies to their plan more than a decade earlier. 2014 WL 1217664, at *2. The culpability factor of the Hummell test favored an award of fees because plaintiffs "were willfully ignorant of their obligations as Trustees and of the Plan investments." Id. at *5. In Foley, the plaintiff claimed that he had been terminated from employment for the purpose of interfering with his pension, an ERISA violation. 30 F. Supp. 2d at 368. He filed his suit ten years after his discharge, his claim was time barred, he had no evidence of illegal motivation for the firing, and there was ample evidence of a legitimate motive. Id.

These cases are easily distinguishable from the way Plaintiffs litigated their ERISA claims in this lawsuit. Although the Court ultimately concluded that Plaintiffs could not prove their case and entered judgment in Defendants' favor, their claims were not groundless and were not barred by the statute of limitations. Defendants' reply brief contends that Plaintiffs misrepresented that all of the benefits projections showed that death benefits did not fall below face value and that

6

Wells Fargo's predecessor interpreted the Plan in the same they that Plaintiffs did. While the Court did not find Plaintiff's analysis of the benefits projections persuasive, they put forward good faith, if mistaken, arguments for their position that the documents supported their claims. The Court does not conclude that they deliberately lied. Moreover, Defendants' citation to Angichiodo v. Honeywell Pension & Savings Plan, 2017 WL 1833586, at *2 (D. Ariz. May 8, 2017), is unavailing where the court found that the plaintiff was culpable because she had all of the information she needed before filing suit to correct her misunderstanding of how the benefits claim process worked. Plaintiffs had other bases for their benefits claims, although these, too, did not prevail in the end. For example, they relied upon a summary plan description, which they argued was a Plan document and provided for a secured death benefit. Accordingly, there is no basis for concluding that Plaintiffs acted culpably or in bad faith in pursuing this litigation, and this factor does not weigh in favor of an award of attorneys' fees.

### 2. Ability of Plaintiffs to Satisfy an Award of Fees

The second factor is whether Plaintiffs have the ability to satisfy an award of attorneys' fees. Defendants point to the annual retirement benefits that they are entitled to receive ($144,523 for Black, $149,777 for Burgess, and $223,501 for Smith, plus 3% annual increases) as evidence that they can satisfy the requested $363,876.50 (or $121,292.17 divided three ways) fee award. Defendants also note that they were each highly compensated individuals during the course of their careers.

Plaintiffs respond that they are not in a position to pay the requested fees. They state that the loss of life insurance that they expected to receive has dealt them a "severe financial blow," as they must scramble to make other arrangements for their estates. Opp. at 7. They also raise the specter that some of their retirement income can transition from non-taxable to taxable income if interest rates stay the same. Moreover, they are all in their sixties and have significant health issues, and Defendants' requested fees would significantly reduce the total annuities they are expected to receive from the Plan. Therefore, they are not able to pay Defendants' legal fees in addition to their own. Even if they were able to pay Defendants' fees, this factor does not weigh in favor of awarding fees where "defendants are as able as [the plaintiffs] to bear the cost of their

7

attorneys fees." Bogue v. Ampex, 976 F.2d 1319, 1327 (9th Cir. 1992). As one of the country's largest banks, Defendants can pay the attorneys' fees they incurred defending this case, and almost certainly more easily than Plaintiffs would be able to do as individuals.

Defendants reply that if Plaintiffs are now contending that they are unable to pay its attorneys' fees, then they should be afforded an opportunity to conduct post-judgment discovery. Rule 69 provides that: "In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of records may obtain discovery from any person -- including the judgment debtor -- as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). However, this rule is used "to enforce the judgment by way of the supplemental proceedings." Danning v. Lavine, 572 F.2d 1386, 1390 (9th Cir. 1978). Defendants do not provide any authority for permitting this kind of discovery before the Court has entered a money judgment (here, by way of an award of attorneys' fees), and such discovery would not be appropriate in this situation.

For all of the reasons Plaintiffs articulate, this factor does not weigh in favor of an award of attorneys' fees.

### 3. Whether an Award Would Deter Others

Defendants argue that an award of its attorneys' fees will deter other sophisticated participants from pursuing other claims, which Defendants contend have no basis in the Plan documents, citing Credit Managers, 25 F.3d 743 (awarding attorneys' fees to defendants and thereby "serv[ing] the purposes of ERISA by discouraging other litigants from relentlessly pursuing groundless claims"); Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 446 (9th Cir. 2006) (awarding attorneys' fees to defendant "not to deter plaintiffs from bringing colorable claims for benefits, but from unnecessarily expanding the scope and complexity of litigation"); Carty v. Metropolitan Life Ins., 2017 WL 660680, at *5 (M.D. Tenn. Feb. 17, 2017) (explaining that it is appropriate to deter not only deliberate misconduct but also conduct that is "reckless or negligent"). Defendants argue that such an award vindicates the "'careful balanc[e]' between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." Aetna Health Inc. v. Davila, 542 U.S. 200, 215 (2004) (quoting Pilot Life Ins. Co.

8

v. Dedeaux, 481 U.S. 41, 55 (1987)).

The interest in deterring meritless claims, however, is balanced against the interest in ensuring that plan participants are not overdeterred from pursuing the prompt enforcement of their rights under a plan. See Honolulu Joint Apprenceticeship & Training Comm. of United Ass'n Local Union No. 675 v. Foster, 186 F. Supp. 2d 1114, 1122-23 (D. Haw. 2001), aff'd, 332 F.3d 1234 (9th Cir. 2003) ("The deterrence factor of an attorney's fee award is generally aimed at protecting participants in employee benefit plans against the abuses or administrative failures of the plan, circumstances which are not present here."); see also Corder v. Howard Johnson & Co., 53 F.3d 225, 231-32 (9th Cir. 1994) (explaining that fee awards will "tend to deter marginal but meritorious" claims by plan participants, contrary to Congressional intent); Tingey v. Pixley-Richards W., Inc., 958 F.2d 908, 910 (9th Cir. 1992) ("We see little benefit to be had by charging individual plan-beneficiary plaintiffs . . . with costs for policy reasons that speak more appropriately to institutional litigants in the ERISA arena," and noting that this factor is generally more appropriate when considering whether to award fees to a plaintiff).

There is no clear benefit to deterring colorable but ultimately losing claims, such as the ones brought by Plaintiffs. See Salovaara v. Eckert, 222 F.3d 19, 31 (2d Cir. 2000) ("where, as in this case, an ERISA plaintiff has pursued a colorable (albeit unsuccessful) claim, the third [deterrence] factor likely is not merely neutral, but weighs strongly against granting fees to the prevailing defendant"). It would be contrary to the public policy interest of encouraging good faith ERISA claims to award fees where, as in this case, Plaintiffs did not bring a meritless claim. This is in contrast to situations that might warrant an award of attorneys' fees against a plan participant who brought patently meritless claims. See Reilly v. Charles M. Brewer Ltd. Money Purchase Pension Plan & Trust, 349 Fed. App'x 155 (9th Cir. 2009) (affirming award where the plaintiff, a self-represented attorney, who had lost his ERISA claims, filed a second identical lawsuit, which was dismissed on res judicata grounds).

Plaintiffs also contend that there is no precedent for requiring ERISA plaintiffs to pay a six-figure attorneys' fee award as Defendants seek. They point out that the cases Defendants cite in its opening motion did not award fees against a plan participation in an amount that is greater

9

than the low five figures. In Reilly, the defendant sought award of $29,704 for prevailing at the pleadings stage on its res judicata defense, but the court reduced the award to $14,871. Id. In Shockley, the court awarded fees to defendant but reduced the requested amount by 90 percent out of a concern for overdeterrence. See Shockley, 130 F.3d at 405, 408 (9th Cir. 1997). In Foley, the court awarded a fee of $10,000 out of the requested $40,000 plus costs, to be paid at $100 per month for the remainder of the plaintiff's life or until he had paid the total without interest. See Foley, 30 F. Supp. 3d at 369.

While Defendants counter that several courts have granted six-figure attorneys' fee awards in ERISA cases, in those cases the plaintiff acted with bad faith or culpability or other unique facts existed that are not analogous to this case. See Stark v. PPM Am., Inc., 354 F.3d 666, 674 (7th Cir. 2004) (affirming fees award of $261,529 of requested $493,470 against individual whose claims were found to not be substantially justified); Moore v. Lafayette Life Ins. Co., 458 F.3d 416, 445-48 (6th Cir. 2006) (affirming award of $120,976.48 in case where the district court found that the plaintiff did not litigate in good faith); DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity, 2011 WL 1131110, at *14 (N.D. Ill. Mar. 28, 2011) (granting fees award, which was later determined to be $121,601.43, where the court found that the plaintiff's claims were not substantially justified because the plaintiff lacked standing, his claims were time barred, he failed to exhaust administrative remedies, and he lacked a colorable basis for his claims); Moreno v. S.J. Weaver Contracting, Inc., 2006 WL 2827908, at *3 (N.D. Cal. Oct. 3, 2006) (granting defendants' fees request in part where the court agreed with the individual defendant's long-standing argument that there were no grounds for establishing a legal or factual basis for the plaintiff's claim against him; ultimately the parties settled the case without a final determination from the court on the amount of the requested $122,702.80 in fees that the defendant requested).

The Court is persuaded that the risk of deterring colorable ERISA claims of plan participants weighs against awarding attorneys' fees here. Accordingly, this factor weighs against an award of attorneys' fees.

#### 4. Whether the Party Requesting Fees Sought to Benefit All Participants or Resolve a Significant Legal Question

The Ninth Circuit has explained that this factor is generally "more appropriate to a determination of whether to award fees to a plaintiff than a defendant," so this factor is of lesser significance to the Hummell analysis in this case. See Tingey, 958 F.2d at 910 (quoting Marquardt v. North Am. Car Corp., 652 F.2d 715, 719 (2d Cir. 1981)). Nonetheless, Defendants argue that an award is warranted because they have resolved several significant legal questions in the course of defending this case. First, they established that a successor entity does not need to provide a summary plan document at the time it takes control of a predecessor and also does not need to take "some other affirmative action to inform [participants] of [an administrator's] interpretation of the Plan documents at that time." Dkt. No. 61 at 15-16 (Court's order granting Defendants' motion to dismiss Plaintiffs' fiduciary duty claim in the second amended complaint). Second, they established that the Plan documents do not contain a promise to fund the face value of the life insurance policies in addition to funding the annuity itself, which provides further clarity for other participants about the benefits they are entitled to receive.

Here, Wells Fargo was defending itself, rather than proactively vindicating legal rights. However, Defendants are correct that the Court resolved these legal questions in their favor, which help provide guidance to other participants as they consider the extent of their rights under the Plan. At the same time, Defendants have not indicated how large the universe of participants in the Plan is, and in earlier proceedings there was a suggestion that Plaintiffs' claims are the first ones that have ever been made under the Plan. Therefore, any benefit that resolution of these questions has for other participants might be fairly limited. While not particularly weighty in the overall consideration of this motion, this factor weighs slightly in favor of granting an award.

#### 5. Relative merits of the Parties' Positions

While the Court ultimately ruled in Defendants' favor, the final question about whether the Plan provided for full funding of the life insurance policies was not an easy question. Although the Court followed Ninth Circuit precedent and ruled in favor of Defendant when it was "not left with the 'definite and firm conviction that a mistake ha[d] been committed,'" it also commented that Plaintiffs' arguments were "not groundless," although "ultimately not persuasive." Dkt. No.

86 at 17, 23. Plaintiffs raised colorable claims and legitimate arguments about the terms of the Plan, the role of non-Plan documents, and extrinsic evidence. Plaintiffs' claims were not meritless, even if they did not win the day. Thus, this factor is neutral.

Upon review of the five Hummell factors, the Court concludes that they do not weigh in favor of awarding attorneys' fees to Defendants in this case. Accordingly, the Court DENIES Defendants' motion for attorneys' fees.

**IT IS SO ORDERED.**

Dated: March 27, 2018

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge